No. 37,092

WILLIAM KOKENGE, *Appellee*, v. BEN C. HOLTHAUS, *Appellant*.

(194 P. 2d 482)

 Opinion filed
June 12, 1948. 

*Harold E. Doherty,* of Topeka, and *John D. Cunningham,* of Seneca, argued the cause, and *Raymond Briman,* of Topeka, was with them on the briefs for the appellant.

*Edward Rooney,* of Topeka, argued the cause, and *Jacob A. Dickinson* and *David Prager,* both of Topeka, were with him on the briefs for the appellee.

The following opinion was prepared by MR. JUSTICE BURCH and approved by the court during his lifetime:

This appeal is from an order of the district court overruling a demurrer to a petition which, with its amendment, the trial court held, alleged a cause of action under the Iowa guest statute. Another question presented is whether strict construction should be given to a petition after a second motion to make the petition more definite and certain has been filed without permission of the trial court but has been by that court considered on its merits and overruled.

The parties will be referred to as designated in the pleadings. The petition alleges, in substance, that on November 5, 1944, the plaintiff, William Kokenge, and his wife, Edith, and also John Kokenge and' his wife, Anna, were riding in an automobile with the defendant and his wife, Sallie, upon a state or national highway in Iowa, between the hours of 5:30 and 6:00 p. m.; all of the parties were going to the funeral of a friend of the Kokenge family except the defendant, who did not know the deceased person and whose primary object in making the trip was to enjoy a short vacation and to inspect some Iowa farm land. The petition also alleges that no agreement had been entered into for sharing the expenses of the trip and that the defendant was gratuitously driving the Kokenge family to the funeral. According to the petition, a collision occurred between the car driven by the defendant and a car bearing a Minnesota license, with the result that all of the occupants of the defendant's car were severely injured and the injuries caused the death of the wife of the defendant and the personal injuries to the plaintiff. which were so extensive, painful, permanent, and necessitated such expense, that the plaintiff is entitled to recover judgment in the sum of $25,432.20. The allegations in the petition relative to the cause of the accident will be subsequently set forth herein.

The petition was filed on February 8, 1946. On the following

March 11 the defendant filed a motion to make more definite and certain which requested that the court require the plaintiff to set out the law or statute of the state of Iowa which the plaintiff contended applied to or governed the cause. For some reason the motion was not presented to the court until the 2d day of the following September, at which time the plaintiff confessed the motion, and the court allowed him thirty days to file an amended petition and the defendant thirty days thereafter in which to plead or answer. The plaintiff did not file any amendment within the time allowed but on December 27, with the consent of the court, he filed the following amendment:

"Comes now the plaintiff and amends his petition in reference to pleading the law of Iowa by stating that the statute of Iowa pertaining to guests is as follows, to wit:

" '. . . The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or *because of the reckless operation* by him of such motor vehicle.' [See sec. 5037.10 of the 1939 and sec. 321.494 of the 1946 codes of Iowa.] [Emphasis supplied.]

"Plaintiff further relies upon the decisions of the Supreme Court construing said statutes as the same appear in the reports of Iowa Supreme Court."

The petition does not allege that the defendant was driving while intoxicated.

On January 27, 1947, the defendant filed a motion to strike certain allegations from the petition and at the same time filed a second motion to make the petition more definite and certain. The motions were not argued to the court until the 16th day of June, 1947, at which time both motions were overruled, and the defendant was given thirty days thereafter in which to plead further or reply to the petition. On the following July 15 the defendant filed a demurrer, in which it was asserted that the petition and its amendment did not state facts sufficient to constitute a cause of action against the defendant. The demurrer was overruled on September 1, 1947. Notice of appeal to this court followed within the period provided by the statute.

The exact dates on which the various pleadings were filed and considered have been set forth herein in order to serve as a basis for consideration of a contention made by the plaintiff to the effect that the defendant's motions to make more definite and certain should not be considered because they were filed for the purpose

of delay and that as a result of the second motion, the time has expired in which the plaintiff could file any new cause of action. The record does not support the contention. The defendant filed his pleadings within the allowed time and is not shown to have delayed the hearings thereon. The plaintiff could have confessed the first motion without waiting nearly six months and probably could have obtained a hearing on the second motion without waiting almost another six months.

The defendant contends that because his second motion to make the petition more definite and certain was resisted and overruled, the petition is subject to critical analysis and strict construction when attacked by a general demurrer (citing *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P. 2d 822; *Frogge v. Kansas City Public Service Co.*, 159 Kan. 687, 157 P. 2d 537; *Kinderknecht v. Hensley*, 160 Kan. 637, 164 P. 2d 105; and *Elliott v. Peters*, 163 Kan. 631, 185 P. 2d 139.) The plaintiff concedes that such is ordinarily the rule but asserts that it should not be followed in this case because the precise nature of the complaint is stated in the petition by reason of the substantive facts alleged therein in ordinary and concise language (citing *K. P. Rly. Co. v. McCormick*, 20 Kan. 107; *DuBois v. City of Galena*, 128 Kan. 253, 276 Pac. 802; *Allison v. Borer*, 131 Kan. 699, 293 Pac. 769; and our recent case of *Henderson v. National Mutual Cas. Co.*, 164 Kan. 109, 187 P. 2d 508.) The third syllabus in the Henderson case, *supra*, reads as follows:

"A petition which fairly apprises defendant what plaintiff's claim is to be is not properly subject to a motion to make definite and certain and where such motion is properly resisted and overruled the rule of strict construction on demurrer does not apply."

The plaintiff also relies upon a statement from the opinion in the Henderson case, *supra*, reading as follows:

"Ordinarily a party is not permitted to file successive motions seeking the same relief after the first motion has been overruled but must include all such requested relief in his first motion. A second motion under such circumstances ordinarily may be filed only after first obtaining leave of court." (p. 111.)

The quotation just set forth is followed in the opinion by the citation of the case of *Adams v. Lockwood, Englehart & Co.*, 30 Kan. 373, 2 Pac. 626, in which case a second motion was made to discharge an attachment upon different grounds. The opinion in the last-cited case reads:

"As this second motion was filed without leave of the court, it might properly have been disregarded. None of the grounds stated in it could by any pretense be called new matter; that is, facts arising since the decision of the first motion. A party has no right to trouble the court or annoy the opposite party by successive motions *seeking the same relief*, even though he bases them upon different grounds. He must include everything in the first motion, and can only file a second motion upon leave of the court, which will be rarely granted, and then *only where justice seems manifestly to require it.*" (p. 374.) (Emphasis supplied.)

Obviously, a motion to discharge an attachment is quite different from a motion to make a petition more definite and certain. One seeks complete relief upon a definite issue, while the other seeks to make the issue complete and definite. A motion to discharge an attachment should embody all legal grounds which would justify such relief in order to avoid delay and a multiplicity of hearings upon the same issue. A meritorious motion to make definite and certain, however, seeks to have the pleader set forth in concise language the facts upon which the pleader relies as constituting a cause of action. (See G. S. 1935, 60-704, *Second.*) Doubt may be expressed as to whether the early case of *Adams v. Lockwood, Englehart & Co.*, supra, is authority which would always justify a trial court in refusing to consider, upon its merits, a second motion to make definite and certain. At least, such should not be the rule in cases wherein an amendment necessitates or warrants a second motion. In the present case the defendant could not know what facts might be essential to the plaintiff's alleged cause of action until it was determined under what Iowa statute or law the action had been brought. Until the defendant knew that the plaintiff sought to allege a cause of action under the Iowa guest statute, it was impossible for the defendant to file proper motions to make definite and certain in order to determine whether the alleged facts justified recovery under that act. Moreover, the opinion in the Henderson case, *supra,* very carefully points out, "We fail to find plaintiffs presented that contention to the trial court." (p. 111.) The contention therein was disregarded. The record likewise in the present case does not show that the failure of the defendant to obtain the consent of the court to the filing of the second motion to make definite and certain was ever called to the attention of the trial court. The motion was considered upon its merits and resisted without such objection by the plaintiff. If the failure to obtain permission had been called to the attention of the trial court, the defendant, in all probability, would have asked the court's per-

mission to file the second motion to make definite and certain and the court could have considered the request upon its merits. It follows that such possible right of the defendant has been prejudiced by the *silence* of the plaintiff and that the contention cannot be raised for the first time upon this appeal. In addition, it may be observed that the defendant was not seeking the *same relief* in both motions.

The petition alleges: At the time the accident occurred it was getting dark; there was a drizzling rain; defendant was driving on a wide curve in excess of 80 miles an hour; just previously, on behalf of all the Kokenge guests, Edith Kokenge, wife of the plaintiff, protested and begged the defendant to "please slow down and be careful"; the defendant paid no attention to the admonition and in less than a minute thereafter collided with a Minnesota car, knocking it into a ditch and upsetting the car in which the parties were riding; the injuries to the plaintiff "were the immediate, direct and *a*pproximate (*sic*) result of the defendant's gross, wanton and culpable negligence" and his utter disregard for the lives and safety of his passengers in driving at the excessive rate of speed of 80 miles an hour under the conditions above described. Another paragraph of the petition repeats the same allegations and further alleges that at the time there was oncoming traffic on the wet curve and that the defendant was driving too close to the left side of the highway, to wit: The left wheels on or to the left of the center of the highway, and that he was guilty of gross, wanton and culpable negligence in driving at 80 miles an hour because of the reduced visibility which existed between the hours of 5:30 and 6:00 p. m., due to the slight drizzle of rain falling.

The defendant's second motion to make the allegations more definite and certain reads, in part, as follows:

. . . . . . . . . . . . . .

"3. By stating the kind or type of highway construction.

. . . . . . . . . . . . . .

"5. By stating in what direction the Minnesota car was proceeding, and on which side of the highway it was traveling.

"6. By stating the point on the road or highway where the cars came together and the place where the collision occurred.

. . . . . . . . . . . . . .

"8. By setting out the facts surrounding the accident so as to enable the court and defendant to determine how the accident occurred.

"9. By stating whether or not there were more than two automobiles involved in the collision."

The court is of the opinion that all the enumerated grounds of the motion were sound. The type of highway construction is a material element in determining whether a defendant is guilty of "reckless operation" in driving a car. The defendant was entitled to know whether he was being accused of having driven his car into the back or the front of the car from Minnesota. The petition only alleges that the car the defendant was driving "collided with a Minnesota car." It was likewise proper to require the plaintiff to allege as to which side of the highway the Minnesota car was traveling because such fact had direct bearing upon the ultimate question to be determined as to whether the only direct and proximate cause of the accident was the manner in which the defendant's car was driven or whether defendant's driving was only a remote or concurrent cause incidental to the accident which was, in part at least, caused by the improper driving of the car from Minnesota. For the same reason ground 6 of the motion was meritorious because compliance with the request therein made would have enabled the defendant to know whether the plaintiff intended to prove that the cars came together near the center of the highway or whether the Minnesota car was being driven on the wrong side of the highway. Unquestionably, ground 8 of the motion should have been sustained because asserting merely that a collision occurred does not even allege negligence and certainly does not allege "reckless operation." Ground 9 of the motion also was germane to the question of proximate cause. All grounds of the motion, herein set forth, sought information which was material for the purpose of determining whether the defendant was guilty of "reckless operation" of the car, as such term is defined by the Iowa decisions. The court is unable to comprehend why the plaintiff saw fit to resist complying with any and all of the set-forth grounds of the motion. As a result of its successful resistance in this case, we are forced to consider a petition which does not allege the type of construction of the highway upon which the accident occurred, the manner in which the involved cars came together, where they came together, whether more than two automobiles were involved, or any facts showing how the accident occurred. Without any allegations whatever as to such circumstances, the precise nature of the complaint was not stated by the alleged substantive facts and the cases relied upon by the plaintiff do not warrant the resistance of the motion.

We must consider whether the petition alleges a cause of action

predicated upon "reckless operation" which is essential to recovery under the Iowa guest statute. One of the principal contentions of the defendant is that there is no properly pleaded allegation in the petition showing that the conduct of the defendant was the proximate cause of the accident. The contention is worthy of consideration because a demurrer, filed after a motion to make definite and certain has been successfully resisted, admits only facts well pleaded and does not confess conclusions which are attacked by the motion. (See *Munger v. Beiderwell*, 155 Kan. 187, 124 P. 2d 452, and *Kinderknecht v. Hensley*, supra.) We digress to observe that the parties to this action do not contend that the law of Iowa governs and controls the construction which should be given to the pleadings. Neither do they assert that our rule relative to strict construction after a motion to make definite and certain has been resisted and overruled does not apply, or that our rule relative to pleading conclusions should not be followed. Both parties apparently concede that since the action was brought in Kansas, the law of the forum applies as to the construction of pleadings. Since there is no controversy in the case over the question, we will assume that the law of Kansas governs the construction which should be given to the petition and that we need not decide the question. (See Restatement of the Law, Conflict of Laws, §§ 585-592, and 15 C. J. S. 896, § 12 *et seq.*) The parties concede that the law of Iowa, which is the *lex loci delicti*, controls as to the substantive law involved. Accepting such concessions of the parties as a proper basis for decision, we return to the question whether the petition properly alleges that the conduct of the defendant was the proximate or legal cause of the accident. The petition pleads, ". . . that the injuries to this plaintiff . . . were the immediate, direct and *ap*proximate [*sic*] result of the defendant's gross, wanton and culpable negligence and his utter disregard for the lives and safety of his passengers in driving at the excessive rate of eighty (80) miles per hour under the conditions above described." In addition, the petition alleges, ". . . that the aforesaid negligence was the immediate and direct and *ap*proximate [*sic*] cause of all the injuries which he received in said accident, . . ." We may ignore the use of the term "approximate" instead of "proximate" upon the theory that it twice appears to have been a stenographic error.

Inferences are not indulged in favor of the pleader under the rule of strict construction. Strict construction assumes that the

pleader has stated all that can be stated in his favor. (See list of cases cited on page 640 of *Kinderknecht v. Hensley,* supra.) The motion to make definite and certain sought information as to the precise cause of the collision and the consequent injuries. The petition does not allege that the defendant drove his car into the car from Minnesota.* The petition only alleges that the car which defendant was driving "collided with a Minnesota car." The car from Minnesota may or may not have struck the defendant's car or may have appeared suddenly on the wrong side of the highway. The inference from strict construction is that the car from Minnesota was on its wrong side of the highway because the plaintiff could not state that the contrary was true in compliance with specific requests for such information as set forth in grounds 5, 6 and 8 of the motion. Exact accuracy in construction would compel the conclusion that the speed of the defendant's car in the surrounding alleged circumstances caused the injuries but that nothing is alleged as to what caused the collision, without which, of course, the injuries would not have occurred. The pleadings present a puzzle. The petition does not allege that the defendant failed to see the car from Minnesota, failed to apply the brakes, failed to control the car properly in any respect or failed to do anything except that he failed to "slow down and be careful" within "approximately less than a minute" after a passenger had made a request that he do so. The court is unable to determine from the petition what was the legal cause of the collision. Accepting as true all the allegations of specific facts in the petition, it would not follow necessarily therefrom that a collision would occur without some additional circumstance which is not alleged. We are unable to ascertain from any allegations why or how the collision occurred. Since we must strictly construe the petition, we cannot assume that some one or all the facts alleged caused the collision because we would be drawing a conclusion therefrom in the same manner in which the pleader saw fit to do, and as before said, conclusions are not well pleaded allegations when the rule of strict construction must control. When all of the facts pleaded would not cause a collision or an accident unless from surmise or conjecture an additional essential circumstance must be inferred or implied, the result follows that the pleading does not allege sufficient facts to constitute a cause of action under the rule of strict construction. In such circumstances, the absence of the essential missing element is an

omission "fatal" to adequate allegations of the direct, proximate and legal cause.

In the case of *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 185 P. 2d 158, which is a negligence case, many of the general rules relative to negligence were reviewed in the opinion written by Mr. Justice Parker on behalf of the court. Some of the principles therein set forth have controlling application in this case. The opinion reads as follows:

"Most of the legal rules having application to the facts disclosed by the record in the case at bar are fully set forth in two of our outstanding automobile negligence cases, consistently followed and approved by this court in subsequent decisions. We have reference to *Hendren v. Snyder,* 143 Kan. 34, 53 P. 2d 472, and *Crowe v. Moore,* 144 Kan. 794, 62 P. 2d 846. In each such decision it was said:

" 'The simple fact that there was a collision and someone was injured is not of itself sufficient to predicate liability.' (*Zinn v. Updegraff,* 113 Kan. 25, 35, 213 Pac. 816; 9 Blashfield Cyclopedia of Auto Law, 399.) . . . 'A fact is not proven by circumstances which are merely consistent with its existence.' (*Canestro v. Joplin-Pittsburg Rld. Co.,* 135 Kan. 337, 341, 10 P. 2d 902.)

" 'In *Whiteker v. Wichita Rld. & Light Co.,* 125 Kan. 683, 265 Pac. 1103, it was held: "A finding of negligence cannot rest on mere conjecture, but must be established by competent proof." (Syl. ¶ 1.)' [Citation of additional cases.]

"Almost identical statements appear in the more recent case of *Miller v. Gabbert,* 154 Kan. 260, 266, 118 P. 2d 523." (p. 617.)

The opinion continues:

"To the foregoing canons of law we might add two more which are applicable here. One, so universally recognized as to almost preclude necessity for citation of authorities, is that negligence is not actionable unless it is the proximate cause of injury (see West, Kansas Digest, 'Negligence,' § 56). The other, similar in character, but having particular reference to recovery of damages for injuries sustained in motor vehicle collisions is that mere violations of an ordinance or statute regulating traffic, such as *excessive speed,* defective equipment, *driving down the center of the highway,* or other matters of a similar nature, are not sufficient to make the driver of an automobile guilty of actionable negligence in an action involving a collision *unless it appears* from the evidence that such violations contributed to the accident and were the proximate cause of the injuries therein received. [Citation of cases.]" (p. 618.) (Emphasis supplied.)

In the Goodloe case, *supra,* the court was considering absence of evidence rather than insufficient allegations but it is equally essential that a petition adequately allege the proximate cause of an accident when challenged by a demurrer filed after the overruling of a meritorious motion to make definite and certain. The syllabus in *Kinderknecht v. Hensley,* supra, reads as follows:

". . . before a plaintiff can recover in an action predicated on negligence he must both allege and prove the negligence which was the proximate cause of the injury for which recovery is sought; . . ." (¶ 1.)

See, also, *DeBauge v. DeBauge*, 143 Kan. 880, 57 P. 2d 31.

The defendant makes the contention that unless a petition discloses what was the legal cause of a collision, it does not sufficiently plead a cause of action based on negligence and that such a petition should never be construed as alleging a cause of action predicated upon "reckless operation" which Iowa has held is something "stronger . . . than negligence or want of reasonable care." (*McQuillen v. Meyers*, 213 Iowa 1366, 1368, 241 N. W. 442.) Probably it is unnecessary for us to project the picture presented by the pleadings upon the substantive law of Iowa. However, in furtherance of a desire to give the plaintiff the benefit of every favorable legal consequence which can develop properly from the allegations of the petition, a short consideration will be given to the Iowa decisions.

The applicable statute of Iowa, in substance, sets forth that a guest cannot recover unless the accident occurs because of the "reckless operation" by the owner or operator of the motor vehicle. The plaintiff's petition does not specifically charge the defendant with "reckless operation." Instead of so alleging, it sets forth that the defendant was guilty of gross, wanton and culpable negligence. As was said in *Frazier v. Cities Service Oil Co., supra:*

"Before discussing what constitutes gross and wanton negligence, it may be well to observe that the use of those words standing alone is a mere conclusion (*Blosser v. Wagner*, 144 Kan. 318, 59 P. 2d 37), and that their use does not strengthen the facts alleged (*Root Grain Co. v. Livengood*, 151 Kan. 706, 100 P. 2d 714), and if the petition alleges gross and wanton negligence, it is by reason of facts showing gross and wanton negligence. [Citing cases.]" (p. 664.)

Plaintiff, however, asserts that the use of the term "wanton" embraces "reckless operation" as such term is defined by the Iowa decisions. In a recent Iowa case the Iowa supreme court held:

"To constitute recklessness . . . , conduct must be more than negligent and . . . manifest a heedless disregard for, or indifference . . . of others or, . . . consequences. It need not involve moral turpitude nor wanton and wilful conduct." (*Crowell v. Demo*, 231 Iowa 228, 230, 1 N. W. 2d 93.)

Another Iowa decision holds:

". . . Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton,' . . ." (*Siesseger v. Puth*, 213 Iowa 164, 182, 239 N. W. 46.)

From such decisions we may conclude that allegations of wanton conduct may be sufficient·to include "reckless operation" because "reckless operation" is something less than wantonness under the Iowa, rule but it cannot be overlooked that the wanton conduct must develop from the facts alleged and cannot develop from merely a pleaded conclusion or by resort to inferences. (See *Lofland v. Croman,* 152 Kan. 312, 103 P. 2d 772; *Frogge v. Kansas City Public Service Co.,* supra, and *Frazier v. Cities Service Co.,* supra.)

By referring to the specific facts alleged in the petition and disregarding for the moment the question of proximate cause, we find that the petition discloses that the injuries to the plaintiff were caused by the defendant's "utter disregard for the lives and safety of his passengers in driving at the excessive rate of eighty (80) miles per hour under the conditions above described," and by defendant failing to heed an admonition to ". . . slow down and be careful"; and "that the defendant paid no attention to the admonition and in approximately less than a minute thereafter, collided with a Minnesota car, knocking it into a ditch and upsetting the car in which the plaintiff and defendant were riding, . . ."

In the case of *McDonald v. Dodge,* 231 Iowa 325, 331, 1 N. W. 2d 280, it was said that "It may be conceded that 80 miles per hour is an excessive speed, although we are not prepared to say that it alone would amount to recklessness." In *Scott v. Hansen,* 228 Iowa 37, 289 N. W. 710, the defendant was traveling 80 miles per hour and ran into cattle which could be seen for six-tenths of a mile away. The supreme court of Iowa held that it was a case of poor judgment rather than recklessness. The Iowa supreme court has taken a somewhat unusual view as to the legal consequences which follow from admonitions by guests. In *Mayer v. Sheetz,* 223 Iowa 582, 273 N. W. 138, the defendant was driving, in the nighttime, over a gravel road, rounding a curve, traveling in the center of the road, at a speed of 75 miles per hour, and after a plea from plaintiff, "For God's sake don't go so fast," the defendant drove into another car. The Iowa court, in holding that no recklessness was shown, stated:

"And we are convinced that, to recognize recklessness in the facts before us, as distinguished from negligence, would be proceeding unwarrantedly in the direction of eventually so applying the exception as to supplant the rule itself. Nor do we think that the evidence relied on by plaintiff, to establish that there was in decedent's mind an indifference to consequences and a willingness to take a chance, overturns the above conclusions as to the actual

manner and surroundings of the operation of the car. . . . Plaintiff's case depended on establishing that decedent actually did operate the car in a manner that was reckless." (p. 587.).

In *Olson v. Hodges*, 236 Iowa 612, 19 N. W. 2d 676, the defendant was driving while snow was falling, on an icy pavement, around sharp curves and was requested repeatedly to slow down by admonitions of the following character: ". . . the pavement is too slippery for the speed you are going." (p. 615.) Later the car skidded and struck a bridge. The Iowa court quoted, with approval, the following from the case of *Wright v. What Cheer Clay Prod. Co.*, 221 Iowa 1292, 1302, 267 N. W. 92, 97:

" 'In order to be reckless . ., . the driver must have had knowledge of the hazard or peril, *or in the exercise of reasonable and ordinary care . . . should have acquired such knowledge,* and appreciated that hazard and danger existed, but acted in *entire disregard* of the existing danger, and proceeded without heed of or concern for consequences without any care whatever . . .' (Italics ours.)" (p. 622.)

The opinion continues:

"The fact that the appellee and Salisbury protested to appellant concerning his driving, while admissible, is not controlling on the issue before us." (p. 626.)

Some additional consideration may be given to the allegation in the plaintiff's petition that the defendant was driving too close to the left side of said highway, to wit: ". . . the left wheels on or to the left of the center of said highway." In *Wilson v. Oxborrow*, 220 Iowa 1135, 264 N. W. 1, the motorist was driving over the black line in the center of an eighteen-foot pavement on a ten-degree curve, and failed to see an approaching truck. It was held that the evidence was insufficient to warrant submission to the jury the question whether the defendant's conduct was reckless. The plaintiff relies in part upon *Mescher v. Brogan*, 223 Iowa 573, 272 N. W. 645, in which case a guest's recovery was affirmed on evidence which established that the host was driving at night, at sixty to sixty-five miles per hour, over protest, on an unfamiliar gravel road and failed to negotiate an unexpected turn, with the consequence that the car plunged over an embankment. In such case the Iowa court held:

". . . speed alone is not enough, but speed, . . . with limited visibility, congested traffic, slippery road surface and the like, may be sufficient to present a question for the jury." (p. 581.)

Plaintiff also cites *Hart v. Hinkley*, 215 Iowa 915, 247 N. W. 258; *Wright v. Mahaffa*, 222 Iowa 872, 270 N. W. 402; *Claussen v. Estate*

*of Johnson,* 224 Iowa 990, 278 N. W. 297; *Reed v. Pape,* 226 Iowa 170, 284 N. W. 106; *Allbaugh v. Ashby,* 226 Iowa 574, 284 N. W. 816; and *Fraser v. Brannigan,* 228 Iowa 572, 293 N. W. 50. In the cited cases recovery was permitted under the particular facts shown in each case. If it were possible for us to disregard the failure of the plaintiff to allege what was the proximate cause of the accident in the present case, it would be rather difficult for us to reconcile some of the Iowa decisions which give consideration to the question whether "reckless operation" was alleged or proved but we have examined all of the Iowa decisions cited by the plaintiff and in no one of them can we find an instance wherein recovery was allowed under a petition which did not allege, or on evidence which did not prove, the proximate or legal cause of the accident. All of the Iowa cases relied upon by the plaintiff develop that the driver of the car lost proper control thereof for one reason or another and ran into another car or some other obstacle. As hereinbefore repeatedly stated, the petition in the present case fails to allege that the defendant ever lost control of his car or drove it into the car bearing the Minnesota license. We are unable to conclude from the petition that any one fact alleged in the petition caused the collision or that the combination of all the facts alleged in the petition caused it. The trial court should have sustained the demurrer to the petition.

The order overruling the defendant's demurrer is reversed.

COWAN, J., not participating.