(283 P.3d 817)
No. 106,673

MASTER FINANCE CO. OF TEXAS, *Appellant*, v. KIM POLLARD, *Appellee*.

. Opinion filed June 22, 2012.

*Anne Barker Hall*, of Pendleton & Sutton Attorneys at Law LLC, of Lawrence, for appellant.

No appearance by appellee.

Before STANDRIDGE, P.J., MARQUARDT and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: Master Finance Co. of Texas (Master Finance) and Kim Pollard entered into a payday loan contract. Master Finance loaned Pollard $100 with a 199.91% interest rate. Pollard defaulted on the loan payment, and Master Finance filed a lawsuit in Missouri against Pollard. When Pollard failed to answer or appear, Master Finance was granted a default judgment against Pollard in Missouri, with the postjudgment interest rate set at the contract rate—199.91%. Later, the Missouri judgment was filed in Kansas as a foreign judgment. Master Finance requested an order for wage garnishment, which was granted. Pollard objected to the wage garnishment. After a hearing, the district court adjusted the postjudgment interest rate to the Kansas statutory interest rate, ordered the parties to enter into a voluntary withholding order, and ordered Master Finance to release the wage garnishment. Master Finance appeals. Finding the district court exceeded its authority and abused its discretion, we reverse its findings and remand with directions to issue the order of garnishment requested by Master Finance.

## FACTUAL AND PROCEDURAL HISTORY

On August 30, 2005, Pollard and Master Finance entered into a payday loan contract in Missouri. Under the contract, Master Finance loaned Pollard $100 at an interest rate of 199.91% and a finance charge of $55. Pollard was to repay Master Finance in five monthly installments of $31 beginning the following month. Pollard defaulted on her payments.

Four years later, in 2009, a default judgment was entered against Pollard in Missouri. In the judgment, Master Finance was awarded a principal amount of $1,238.89, $185.83 in attorney fees, $55 in process server fees, $33 in costs, and postjudgment interest at the contract rate of 199.91%.

Over a year later, the Missouri judgment was filed in Kansas as a foreign judgment. Subsequently, an order of garnishment against wages was filed against Pollard. By the time of the garnishment, the amount owing had escalated to almost $5,000. Pollard, who appeared pro se, objected to the wage garnishment order, claiming

that she was the head of the household and could not afford the garnishment.

A hearing was held. Pollard indicated that her wages were $13 per hour and she worked a maximum of 35 hours per week. She indicated she was the sole support for her family. Her husband was not working, and she had one young child living at home. Master Finance was receiving, through the garnishment order, 25% of her net income, or roughly $400 per month. The district judge proceeded to inquire about Pollard's monthly expenses and determined that Pollard's minimum living expenses were $1,500 to $1,700 per month, which was equivalent to her net monthly income. The court noted that she did not have health insurance because she was not a full-time employee.

The district court judge was clearly frustrated by the unconscionability of a $100 payday loan resulting in Pollard's garnishment for $5,000. In both his oral pronouncement from the bench and the written journal entry that followed, he recognized that he was required to give full faith and credit to the Missouri judgment and enforce the contractual interest rate. However, he proceeded to fashion his own remedy. He found that if the judgment was to be collected in Kansas, the Kansas judgment interest rate was to apply from the date of his order forward. Next, he reduced the amount Pollard was required to pay to $75 per paycheck, or roughly 10% of her net income. Finally, he ordered Pollard to sign a voluntary withholding order which reflected a withholding of $75 per pay period from her paycheck. Once she signed the withholding order, Master Finance was ordered to release its garnishment. In addition, the district court judge encouraged Pollard to contact Master Finance after some period of payment and make an offer in compromise. Master Finance filed a timely notice of appeal. Pollard did not file a brief.

## ANALYSIS

*We begin with a general discussion of garnishments.*

Garnishment is a procedure whereby the wages of a person can be seized pursuant to an order of garnishment issued by the district court. K.S.A. 60-729; K.S.A. 61-3502. The procedure for obtaining

an order of garnishment is entirely statutory. See *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

Anytime after 10 days following the date a judgment is obtained, garnishment may be used as an aid to collection of the judgment. See K.S.A. 60-731(a); K.S.A. 61-3504(1). Accordingly, a garnishment is not considered a cause of action—it is considered an ancillary or auxiliary proceeding. *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 646, 270 P.3d 1074 (2011).

Once the judgment debtor receives notice of the garnishment of his or her earnings, he or she has the right to object to the calculation of exempt and nonexempt earnings. K.S.A. 60-735. The exemptions from wage garnishments in Kansas are also set out by statute. As it applies to this case, K.S.A. 60-2310(b) limits wage garnishment to 25% of the individual's aggregate disposable earnings. Disposable earnings are defined as that part of the earnings that remain after any deductions which are required by law to be withheld. K.S.A. 60-2310(a)(2). There is an additional exemption for periods of sickness of the debtor or a family member that exceed 2 weeks. K.S.A. 60-2310(c). And finally, the limits vary slightly if the garnishment is for a support order such as alimony or child support, which was not the case here. K.S.A. 60-2310(g). Although Missouri provides an exemption for the head of the household, Kansas has no such exemption. See Mo. Rev. Stat. § 513.440 (2000); *Dunn v. Bemor Petroleum*, 737 S.W.2d 187, 189 (Mo. 1987).

Under K.S.A. 60-735(c), "[i]f a hearing is held, the judgment debtor shall have the burden of proof to show that some or all of the property subject to the garnishment is exempt, and the court shall enter an order determining the exemption and such other order or orders as is appropriate." See also K.S.A. 61-3508(c) (containing identical provisions under the Code of Civil Procedure for Limited Actions).

With this background in mind, we proceed to the issues raised in this case.

*The wage garnishment*

Master Finance argues that the district court abused its discretion by altering the wage garnishment. This requires us to review the extent of a judge's authority under K.S.A. 60-735(c). Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Unruh v. Purina Mills,* 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.,* 289 Kan. 605, 607, 214 P.3d 676 (2009).

There is no dispute that Master Finance followed the statutory procedure to garnish Pollard's wages and that it was limited to 25% of her disposable income. Pollard filled out a request for hearing. In response to why she was disputing the garnishment, she wrote, "I am currently working part-time and I am the head of my household so 25% of my income would be too much from my household income to maintain my living arrangements." K.S.A. 60-735(c) requires the judgment debtor, in this case Pollard, to bear the burden of showing that some or all of the property subject to the garnishment is exempt. Based on the evidence presented, the court "shall enter an order determining the exemption and such other order or orders as is appropriate." K.S.A. 60-735(c). The clear language of the statute limits the hearing to whether the judgment debtor is able to prove the application of an exemption. If an exemption is established, the court would then be required to enter an order or orders adjusting the wage garnishment accordingly. It does not give the court carte blanche to create an exemption that does not exist in the statute.

Pollard failed to allege any exemption recognized under Kansas law, and she likewise failed to present any evidence at the hearing entitling her to an exemption under Kansas law. The district judge was limited to ruling on the existence or nonexistence of an exemption. An abuse of discretion occurs if the discretion is guided by an erroneous legal conclusion or goes outside the framework of proper statutory limitations or legal standards or fails to properly consider factors given by higher courts to guide that discretion.

*Farrar v. Mobile Oil Corp.*, 43 Kan. App. 2d 871, 876-77, 234 P.3d 19, *rev. denied* 291 Kan. 910 (2010). Here, the district judge abused his discretion by essentially creating his own exemption. He compared Pollard's income and expenses and determined that she could not afford the garnishment of 25% of her disposable income. But the Kansas garnishment statutes do not allow for any consideration of the debtor's actual expenses. Calculation of the garnishment amount is based solely upon the debtor's income. Therefore, the district court's decision fell outside the statutory framework. The result was the quashing of a garnishment that complied with all legal requirements. Likewise, the district judge lacked the statutory authority to order the judgment debtor to complete a "voluntary" withholding order, and he lacked the authority to order Master Finance to release its garnishment and accept less money per Pollard's pay period than it was entitled to under the law.

Regardless of whether a court agrees with the legislatively enacted statutory garnishment scheme, absent a successful challenge to its constitutionality, the court has the duty to follow the process required by the statute. In this case, we are not presented with a challenge to the validity of the statute, and the statute clearly required Pollard to present evidence sufficient to establish that she was entitled to an exemption under the Kansas garnishment law. She failed to do so; therefore, the garnishment was proper and the district court abused its discretion when it found otherwise.

*Application of the postjudgment interest rate from a foreign judgment*

When a properly authenticated judgment of a state other than Kansas is offered as evidence in a Kansas court, the Full Faith and Credit Clause of the United States Constitution, Article 4, § 1, gives the foreign judgment the same force and effect in Kansas as it has in the state where the judgment was rendered. *Fischer v. Kipp*, 177 Kan. 196, 197-98, 277 P.2d 598 (1954). So once a copy of an authenticated judgment from another state is filed with a clerk of the district court, the foreign judgment is thereafter treated as a Kansas judgment and can be executed upon the same. K.S.A. 60-

3002; *Padron v. Lopez*, 289 Kan. 1089, 1096, 220 P.3d 345 (2009). Whether a judgment is entitled to full faith and credit is a question of law subject to unlimited review. *Hankin v. Graphic Technology, Inc.*, 43 Kan. App. 2d 92, 107, 222 P.3d 523 (2010).

When the parties in this case entered into a payday loan contract, Pollard agreed to a 199.91% interest rate on the loan. When the Missouri court entered its default judgment against Pollard for failing to appear at the hearing, it ordered the postjudgment interest rate to remain at the contractual rate agreed upon by the parties. There was no dispute that the Missouri judgment was properly filed in Kansas and that the district court was required to honor and enforce the Missouri judgment. The district court so held. Even though the Missouri judgment set the postjudgment interest rate at 199.91%, the district judge altered it to comply with the Kansas statutory rate, which at the time of the hearing, on August 2, 2011, was 4.75%. See K.S.A. 16-204(e)(1) (rate applicable to civil judgments "rendered by courts in this state"). The new rate was to apply from the date of the district court's order forward. Master Finance contends that this was error and resulted in the district court's failure to give the Missouri judgment full faith and credit.

There can be little doubt that a 199.91% interest rate on a $100 payday loan would be considered usurious in Kansas, even if agreed to by the parties. See K.S.A. 16a-2-404 (limits the interest rate on payday loans for $500 or less to 15%). But unless the judgment was entered without jurisdiction, and there is no such allegation here, a judgment from a sister state cannot be impeached for irregularities in the proceedings or erroneous rulings, but must be regarded as binding. *Padron*, 289 Kan. at 1098. In Missouri, the judgment, including the postjudgment interest rate, would be enforceable as entered. See Mo. Rev. Stat. § 408.040 (2000); *Ponca Finance Co., Inc. v. Esser*, 132 S.W.3d 930, 932 (Mo. App. 2004).

Full faith and credit is not without limitation, however. It "does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments." *Baker v. General Motors Corp.*, 522 U.S. 222, 235, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998). " 'The local law of the forum

determines the methods by which a judgment of another state is enforced.'" 522 U.S. at 235 (quoting Restatement [Second] of Conflict of Laws § 99 [1969]). So clearly, Kansas, not Missouri, garnishment procedures apply.

Postjudgment interest is a procedural question and not a substantive question. *ARY Jewelers v. Krigel*, 277 Kan. 464, 479-80, 85 P.3d 1151 (2004). Thus, using the conflict of law analysis in *ARY Jewelers*, when no postjudgment interest has been set forth in the contract or the judgment itself, the law of Kansas applies in determining what the postjudgment interest shall be. But Kansas law states that when a contract provides a specific interest rate, that interest rate continues "until full payment is made, and any judgment rendered on any such contract shall bear the same rate of interest or charges mentioned in the contract, which rate shall be specified in the judgment." K.S.A. 16-205(a). The "parties can agree upon a different rate of interest from the postjudgment rate fixed by statute." *ARY Jewelers*, 277 Kan. at 480. Such an agreement existed here. Accordingly, because the Missouri judgment includes the applicable interest rate in the judgment itself, there is no conflict and the judgment as a whole, including the postjudgment interest rate, must be given full faith and credit.

In his written order the district judge recognized that the court "must enforce the Missouri judgment including the contractual interest rate." Likewise, from the bench he indicated that "under the full faith and credit, the Court has to honor the judgment that was imposed by another state court, and, as a result, I am required to enforce the judgment." He concluded, "[I]t is outrageous; however, it's, most unfortunately for Ms. Pollard, legal." We agree. The facts of this case cry out for equitable relief. But any challenge to the Missouri judgment must be raised before the Missouri courts and not in a collection action in this state. We are bound to follow the law of Kansas and the Constitution of the United States and enforce the judgment as it comes to us, without regard to whether it contravenes the public policy of Kansas or shocks our sensibilities. See *Estin v. Estin*, 334 U.S. 541, 544-46, 68 S. Ct. 1213, 92 L. Ed. 1561 (1948).

Reversed and remanded with directions to issue the order of garnishment as requested by Master Finance.